UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
IINDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SABRINA M. FLECHSIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-0194-RLY-DKL |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Sabrina M. Flechsig brings this action, seeking judicial review of the Social Security Administration's denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act").  *See* 42 U.S.C. §405(g).  Chief Judge Richard L. Young designated the undersigned to issue a report and recommendation.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72.  For the reasons that follow, it is recommended that the decision be reversed and remanded for further proceedings.

I.      **Background**

Flechsig, who is 38 years old, alleges that she became disabled on May 1, 2011 because of headaches, arthralgia (joint pain), obesity, fibromyalgia, COPD (chronic obstructive pulmonary disease), carpal tunnel syndrome, generalized anxiety disorder, major depressive disorder, panic disorder without agoraphobia, and post-traumatic stress disorder.  [*See* R. 156, 185.]  She has a ninth grade education and past work

experience as a restaurant server and property manager.  Her claim was denied initially and on reconsideration.  Flechsig requested a hearing, which was held on September 25, 2013, before an administrative law judge.  Flechsig, who was represented by counsel, testified at the hearing.  Jack E. Thomas Ph.D., a psychological expert; Robert B. Sklaroff, M.D., a medical expert; and a vocational expert also testified.

Flechsig testified that she is single and lives in house with her niece and an older gentleman.  She has been using a cane for 6 to 8 months.  Her boyfriend and mother help her care for herself.  Flechsig stated she was being treated by a doctor for main complaints of fibromyalgia, chronic pain, anxiety, and depression.  She also sees a psychiatrist and pain specialist.  She has crying spells "all the time," explaining that she has "bad ones" once a month, and minor ones a few times a month.  [R. 47.]  She also has panic attacks 3 to 4 times per month.  [R. 66.}

Flechsig stated that she can sit for 30 minutes, walk approximately 50 to 75 feet with a cane, and "maybe 25 feet" without one.  [R. 50-51.]  She can lift and carry approximately 10 pounds.  [R. 51.]  She said she can pick up coins with her fingers, but described that as "hard."  [*Id.*]  She can hold onto a cup for no longer than 2 minutes before dropping it because her "hands cramp up."  [*Id.*]  Flechsig stated that her hands cramp every time she uses them.  Her pain management physician told her that she had carpal tunnel and suggested surgery, but Flechsig did not want to have surgery because she was "scared."  [R. 52.]  So she wore braces on her arms at night.

According to Flechsig, she is able to do her own grooming, except that her mother or boyfriend has to help her brush her hair.  She can dress herself, but has to sit down.

She does not cook, do laundry, wash dishes, mop, dust, or vacuum.  [R. 54.]  When she goes grocery shopping she uses a motorized cart.  She explained that she doesn't go to the movies or go out to eat because of the physical challenge.  She likes to watch television and play digital or video games on a hand-held device or phone.  [R. 58.]  Flechsig testified that on a scale of 1 to 10, with 10 being bad, her pain is a 4 with medication, and an 8 without medication.  [R. 59.]

The ALJ issued a decision denying benefits.  Using the five-step inquiry for social security claims, *see* 20 C.F.R. §§ 404.1520(a), he first found at step one that Flechsig had not engaged in substantial gainful activity since the alleged disability onset date of September 1, 2011 through her date last insured of March 31, 2013.  [R. 21.]  At step two, the ALJ identified Flechsig's severe impairments as a history of headaches, arthralgia, obesity, fibromyalgia, generalized anxiety disorder, major depressive disorder, panic disorder without agoraphobia, post-traumatic stress disorder, and cannabis dependence with episodic use.  [*Id.*]  At step three, he found that none of these meets or equals the severity of a listed impairment.  [R. 22.]  At steps four and five, the ALJ determined that Flechsig was unable to perform any of her past work but has the residual functional capacity ("RFC") to perform other jobs available in the national economy.  [R. 28-29.]  Specifically, he found that Flechsig had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that:

> She is unable to climb ladders, ropes or scaffolds and she should avoid exposure to unprotected heights or dangerous machinery.  She is limited to the performance of only simple, repetitive tasks that do not involve more than occasional contact with the general public, supervisors and peers.  She

is limited to work that involves regular expectations concerning work duties and which does not involve fast-paced production requirements.

[R. 26.]  The ALJ found Flechsig's testimony about the intensity, persistence, and limiting effects of her symptoms "not entirely credible."  [R. 28.]  He concluded that she was not disabled under the Act.  [R. 30.]  The Appeals Council denied review, and Flechsig filed this action, seeking judicial review of the agency's decision.

## II.   Discussion

Judicial review of the ALJ's decision is limited.  *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).  The decision will be upheld if the ALJ applied the correct legal standards and the decision is supported by substantial evidence.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Stepp*, 795 F.3d at 718 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).  A court may not reweigh the facts or evidence or make its own credibility determinations.  *Id.*  An ALJ need only "minimally articulate" his reasons for rejecting or accepting evidence, which is a very "lax" standard.  *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).  An ALJ does not have to mention every piece of evidence, but must build a "logical bridge" from the evidence to his conclusions.  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

Flechsig first challenges the ALJ's credibility finding, which the court must accept unless it is "patently wrong."  *See, e.g., Stepp*, 795 F.3d at 720-21.  She argues that the ALJ failed to properly address SSR 96-7p and ignored evidence supporting her subjective symptoms.

The ALJ's explanation for his credibility finding was inadequate. The only statement of this reasons for finding Flechsig's testimony about the intensity, persistence, and limiting effects of her symptoms "not entirely credible" was "for the reasons explained in this decision." [R. 28.] This is a meaningless explanation as it fails to direct the reviewing court to what information in the record justifies the credibility finding. *See Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) (explaining that the use of "meaningless boilerplate" "does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination"); *Getch v. Astrue,* 539 F.3d 473, 483 (7th Cir. 2008) ("Reviewing courts ... should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported."). Here, the ALJ did not point to what information justified his credibility finding; thus the Court is left to guess as to his reasoning. As best as the Court can tell, the ALJ found Flechsig not entirely credible because the objective medical evidence did not support her allegations to the extent alleged. But a "lack of medical evidence alone is an insufficient reason to discredit testimony." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also* SSR 96-7p, at *1 (claimant's testimony about symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence"). The ALJ failed to build a "logical bridge" between the evidence and his conclusion that Flechsig's statements as to the intensity, persistence and limiting effects of her symptoms were "not entirely credible."

Flechsig also argues that the ALJ erred by ignoring evidence of her carpal tunnel syndrome and COPD with associated breathing problems, and therefore failed to

minimally articulate his justification for his decision. Flechsig's medical records reflect her complaints of bilateral wrist pain, tingling in her fingertips, decreased grip in her right hand, and use of splints. [*See, e.g.*, R. 313, 319.] In April 2012, treating physician Dr. Nicole Nace noted that Flechsig's symptoms and examination were consistent with carpal tunnel syndrome and began a conservative treatment with wrist splints. [R. 374.] Then in June and July 2012, Dr. Nace wrote that Flechsig's wrist pain was "most likely secondary to carpal tunnel syndrome" [R. 320} and referred her for physical therapy to "evaluate and treat carpal tunnel syndrome." [*Id.*]

The ALJ noted that the testifying medical expert Dr. Sklaroff said "the medical evidence does not contain the clinical findings needed to establish the diagnos[i]s of … carpal tunnel syndrome. [R. 27.] The ALJ found Dr. Sklaroff's assessment "most persuasive" because he was a medical expert, he had reviewed all the medical evidence, he listened to Flechsig's testimony, he gave "cogent reasons in support of his conclusions," and his assessment was not contradicted by any other opinion evidence. [R. 28.] The ALJ also noted that a consultative examiner opined that Flechsig was able to open doorknobs, pick up coins, zip and unzip, button and unbutton using both hands without any difficulties. [*Id.*] Thus, contrary to Flechsig's argument, the ALJ did not ignore the evidence of carpal tunnel.

However, despite Flechsig's allegations of disability due to COPD, the ALJ failed to mention this impairment and resulting limitations. The record contains evidence that Flechsig was diagnosed with COPD. [R. 321 (COPD exacerbation noted in July 30, 3012 treatment record with Dr. Nace), 323 (record of dyspnea on exertion and chronic cough),

6

383 (October 19, 2012 treatment record with Dr. Nace listing a primary diagnosis of COPD).] The record reflects Flechsig's reports of symptoms of shortness of breath, cough, and wheezing, and she uses an albuterol inhaler at night. [R. 321, 384.] A March 2013 pulmonary function test showed "mildly reduced diffusing capacity," which the interpreting physician opined "may reflect loss of pulmonary capillary surface area." [R. 480.] The ALJ seems to have overlooked the evidence of COPD. The Commissioner responds that Flechsig bears the burden of showing harmful error. This is true, *see, e.g.*, *Summers v. Colvin*, No. 15-1819, 2016 WL 423711, at *2 (7th Cir. Feb. 4, 2016) (noting that the doctrine of harmless error applies to Social Security cases), and Flechsig has not explained how she was harmed by this oversight. As a result, the ALJ's failure to discuss Flechsig's COPD would not necessitate a remand. But because the case will be remanded, to ensure a reviewing court that he considered all the relevant evidence, the ALJ should address the evidence of COPD and associated breathing problems.

Furthermore, Flechsig maintains that the ALJ erred in failing to articulate a function-by-function assessment of her RFC and thus failed to build a "logical bridge" from the evidence to the ALJ's conclusions. Although the RFC assessment "is a function-by-function assessment," SSR 96-8p; *see Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009); *Kampen v. Colvin*, No. 2:14-cv-132-PRC, 2015 WL 8780554, at *7 (N.D. Ind. Dec. 15, 2015), an ALJ is not required to articulate an RFC function-by-function, *Knox*, 327 F. App'x at 657; *Bailey v. Colvin*, No. 12 C 9659, 2015 WL 7251939, at *7 (N.D. Ill. Nov. 17, 2015). A narrative discussion of the claimant's symptoms and medical source opinions suffices. *Knox*, 327 F. App'x at 657; *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). Here,

however, because the ALJ failed to justify his credibility finding, he failed to build a logical bridge from the evidence to his conclusions.

## Conclusion

The undersigned recommends that the agency's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  The district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection may result in forfeiture of the right to *de novo* determination by the district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed.  *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**The parties should not expect extensions of time to file either objections or responses.  No replies will be permitted.**

ENTERED THIS DATE:  02/10/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record

8